UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                    :
MICHAEL CARTER,                                     :
                                                    :
                                      Plaintiff,    :
                                                    :
                      v.                            :
                                                    :
VERIZON, *et al.*,                                  :
                                                    :
                                    Defendants.     :
                                                    :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 20, 2015

13 Civ. 7579 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On March 11, 2013, Plaintiff Michael Carter, proceeding *pro se* and *in forma pauperis*, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 (the "ADEA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (the "NYCHRL"). Construing his allegations in the strongest manner possible, Plaintiff alleges employment discrimination (in both disparate treatment and hostile work environment forms) and retaliation based on his gender and his age. Defendants, Verizon and several of its employees, have moved to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); Plaintiff has submitted no opposition. For the reasons set forth in the remainder of this Opinion, Defendants' motion is granted in part

and denied in part, and Plaintiff is given leave to amend certain of his
retaliation claims.

## BACKGROUND[1]

### A.   Factual Background

Plaintiff began working at Verizon on June 26, 1997, in the "Manhattan
Business Office."  (SAC 4, 9).[2]  In early 2011, when Plaintiff was 48 years old,
the management team at the Manhattan Business Office changed; Defendant
Julane Lowe became "office manager," and Defendant Ti-shawn A. Kinsey
became "team leader" of the team on which Plaintiff worked.  (*Id.* at 4).  Both
women functioned as Plaintiff's supervisors.  Plaintiff complains that, starting
at the time of this transition in management, he was subjected to
discrimination, harassment, and retaliation based on his age and gender.  (*Id.*
at 4-6).

---

[1]   As is necessary on a motion to dismiss, the facts set forth in the Second Amended
Complaint (or "SAC") are accepted as true.  Citations to the Second Amended Complaint
are made using the pagination imposed by the Court's electronic case filing ("ECF")
system.  In considering a motion to dismiss, a court may also consider documents that
are integral to the complaint.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53
(2d Cir. 2002).  These documents are attached as exhibits to the Declaration of Howard
M. Wexler (the "Wexler Decl.").  For convenience, Defendants' brief is referred to as "Def.
Br.," and the transcripts to the April 1, 2014 conference and May 28, 2014 telephone
conference are referred to as "[DATE] Tr."

[2]   During his employment with Verizon, Plaintiff was a member of the Communications
Workers of America (the "CWA").  (SAC 5).  This meant the terms and conditions of his
employment were governed by a Collective Bargaining Agreement (a "CBA") between
Verizon and the CWA.  (Wexler Decl. Ex. C).  Courts in this Circuit have held that
collective bargaining agreements may constitute documents integral to the complaint.
*See Salamea* v. *Macy's E., Inc.*, 426 F. Supp. 2d 149, 153-55 (S.D.N.Y. 2006)
(considering CBA on motion to dismiss for Labor Management Relations Act ("LMRA")
preemption and exhaustion purposes where dispute as to whether CBA breached, even
where plaintiff did not explicitly rely on CBA in complaint).  While the Court does not
rely on the CBA in deciding the instant motion, it does remark on the potential impact
of the document on Plaintiff's claims.  *See* note 7, *infra.*

Specifically, Plaintiff complains that on or about December 10, 2011, Defendant Lowe "made a snide comment about the fact that she didn't like the way [his] clothes fit." (SAC 4). Plaintiff also claims that, unlike all of the other employees, Lowe did not say "Good morning" to Plaintiff when she arrived at work each morning, even though Plaintiff's work station was located near the entrance to the office. (*Id.*). Plaintiff further alleges that he was not selected for "a new retention team [that] was formed" because of "[f]avoritism" and because Lowe, the supervisor of the team, said that she "wanted 'new blood.'" (*Id.* at 5).

With regards to Defendant Kinsey, Plaintiff claims he was "observed constantly" by her, either "side-by-side or remote." (SAC 4). According to Plaintiff, the side-by-side observations "began to take on a bizarre twist" when Kinsey "would place her hands on [Plaintiff's] shoulders and press her breasts against [him]." (*Id.*). Co-workers joked about the "attention" Plaintiff received from Kinsey. (*Id.*). "[A]t times," claims Plaintiff, Kinsey also "would walk by [his] desk, touch [his] shoulders and ask, 'Do you have some money for me?,'" although Plaintiff effectively concedes that the "money" to which Kinsey was referring pertained to Plaintiff's sales to Verizon customers. (*Id.* at 4-5).

Because of some or all of these incidents, at some point between December 2011 and August 2012, Plaintiff filed an internal complaint against Kinsey, and perhaps others, for alleged Title VII violations. (SAC 5). Plaintiff asserts that "they" (presumably Verizon management) informed Defendants Lowe and Kinsey of his grievance. (*Id.*). Plaintiff claims that after he filed this complaint, observations of his work performance "increased exponentially," and

3

"[o]ther managers" also began observing him. (*Id.*). This increased observation of his work performance, Plaintiff admits, caused him to "forget the call flow." (*Id.*).[3] "Soon thereafter," Plaintiff claims, he was placed on Verizon's disciplinary track, in "Step 2 (reprimand)" of the "performance plan." (*Id.*).

Plaintiff also claims that, at some point, he was placed on the less desirable "Billing pin" telephone duty, rather than the more desirable "Order pin" duty. (SAC 5 (noting that "Billing pin" involved resolution of "intense billing issues" with "irate" Verizon customers, while "Order pin" involved customers who were "only looking to purchase something")). Plaintiff asserts that this was because Kinsey would give "Order pin" duty to her friends or others whom she favored in the office. (*Id.*). Plaintiff also admitted "a problem reading the scripted call flow." (*Id.*). Because he did not "mesh well" with his supervisor Kinsey, Plaintiff sought the assistance of other team leaders. (*Id.*). Those managers, however, referred him back to Kinsey, which Plaintiff claims "made it clear there was some sort of retaliation in effect." (*Id.*).

In August 2012, Plaintiff was placed on "Step 3" of Verizon's disciplinary plan "for not following the call flow." (SAC 5). While Plaintiff was given some additional training and a new template at this point, he still had difficulty with "the volume of irate Verizon users" and the existence of "serious billing problems." (*Id.*). Plaintiff claimed that the "high rate of absenteeism" of his co-

---

[3]     The Court discerns from Plaintiff's complaint that the "call flow" pertains to the manner in which Verizon employees such as Plaintiff are trained to respond to customer inquiries, and that a "template" is a reference sheet setting forth the proper call flow for different factual circumstances. (*See* SAC 5-6).

workers increased his workflow, and meant his job included "not only billing resolution but collections and repair calls." (*Id.* at 6).  Verizon also implemented a "new system" at that time, on which Plaintiff needed to be trained.  (*Id.*).  Plaintiff was overwhelmed with what he called "the hostile work environment, intimidation, and added responsibilities," and he apparently could not get enough help for "issues [he] could not solve." (*Id.*).  On September 10, 2012, Plaintiff "went out sick with stress disability," from which he did not return until December 10, 2012.  (*Id.*).

By that time, Hurricane Sandy had flooded Verizon's Manhattan office, and at least some employees in the Business Office, including Plaintiff, were transferred to an office in Brooklyn.  (SAC 6).  At this new location, Plaintiff had a new supervisor, Defendant Christopher Shea.  (*Id.*).  Plaintiff advanced numerous complaints while working at the Brooklyn office, including that the computer systems did not function properly, the office was kept too hot, he was asked to perform his job with only limited training on the new computer system, and he did not have his template for calls.  (*Id.*).  When he complained to Shea that he was "uncomfortable taking calls without [his] template," Shea explained that no one had been able to retrieve their belongings from the flooded Manhattan business office, as unfortunate as that was.  (*Id.*).  Plaintiff claims that this, too, was evidence that the "hostile work environment was being implemented by all the managerial staff." (*Id.*).  On February 28, 2013, Plaintiff was fired by Defendants Shea and Kinsey.  (*Id.*).

## B.    Procedural Background

On or about April 26, 2013, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") on the basis of race, sex, and age discrimination, as well as retaliation.  (Wexler Decl. Ex. D).[4]  Plaintiff received a Dismissal and Notice of Rights letter from the EEOC on July 31, 2013.  (SAC 7-8).  Plaintiff filed this suit on October 24, 2013.  (Dkt. #1).  All Defendants were served by February 27, 2014 (Dkt. #8-10, 15-16), and all promptly sought leave to move to dismiss Plaintiff's complaint in a pre-motion letter (*see* Dkt. #13).

In light of Plaintiff's *pro se* status, and after two conferences before the Court on Defendants' proposed motion (Dkt. #17, 22), the Court permitted Plaintiff to file an Amended Complaint (Dkt. #19), and then a Second Amended Complaint (Dkt. #24), the latter of which was filed on June 10, 2014.  The Court made clear to Plaintiff during the course of his requests to amend that the last-filed complaint would be the operative pleading document.  (May 28, 2014 Tr. 2-4).

---

[4]    Plaintiff attached his "Dismissal and Notice of Rights" letter from the EEOC to his Second Amended Complaint; the Court thereby considers him to have incorporated his EEOC charge into his complaint by reference.  In any event, "documents filed with the EEOC … and determinations issued by [such] agencies are records of administrative proceedings which may properly be relied upon in connection with the Court's review of a motion to dismiss."  *Smith* v. *Westchester County*, 769 F. Supp. 2d 448, 461 n.12 (S.D.N.Y. 2011); *Morris* v. *David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) ("[W]ith respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims.").

Plaintiff's Second Amended Complaint alleges age and gender discrimination and retaliation under Title VII, the ADEA, the NYSHRL, and the NYCHRL against Verizon and individuals Lowe, Kinsey, Shea, and Paul Donovan (the latter of whom is described by Plaintiff as the "Director of the Manhattan Business Office").  (Dkt. #24).  Before the Court is Defendants' motion, filed July 23, 2014, to dismiss the Second Amended Complaint.  (Dkt. #27).  Plaintiff submitted no opposition to Defendants' motion.

## DISCUSSION

### A.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from

conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation and quotation marks omitted); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed as to do justice."). To survive a Rule 12(b)(6) motion to dismiss, however, a *pro se* plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability,

8

it 'stops short of the line between possibility and plausibility of entitlement to

relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## B.    The Court Dismisses Plaintiff's Claims of Disparate Treatment Based on Age and Gender

### 1.    Applicable Law

Title VII makes it unlawful for an employer to "discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national

origin."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of

discrimination, a plaintiff must demonstrate (i) membership in a protected

class[5]; (ii) qualifications for the position; (iii) an adverse employment action;

and (iv) circumstances surrounding that action giving rise to an inference of

discrimination.  *Ruiz* v. *County of Rockland*, 609 F.3d 486, 491-92 (2d Cir.

2010).

Plaintiff's claims under the ADEA and the NYSHRL are analyzed

similarly, *see Lightfoot* v. *Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir.

1997), but not his claims under the NYCHRL.  For many years, courts

construed the NYCHRL to be coextensive with federal and state anti-

discrimination laws.  *See generally Mihalik* v. *Credit Agricole Cheuveux N. Am.,

Inc.*, 715 F.3d 102, 108 (2d Cir. 2013).  In 2005, however, the New York City

Council amended, and thereby expanded the reach of, the NYCHRL.  *Id.* at 109;

---

[5]    In an ADEA claim, the protected class consists of individuals who are at least 40 years of age.  29 U.S.C. § 631.  Here, Plaintiff was 48 years of age or older when the alleged incidents giving rise to the Second Amended Complaint took place.  (SAC 3).

*see* Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85.

"Pursuant to these revisions, courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs." *Mihalik*, 715 F.3d at 109 (internal citations and quotation marks omitted).

The Second Circuit in *Mihalik* declined to decide "whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims," 715 F.3d at 110 n.8, but offered the following analysis:

> While it is unclear whether *McDonnell Douglas* continues to apply to NYCHRL claims and, if so, to what extent it applies, the question is also less important because the NYCHRL simplified the discrimination inquiry: the plaintiff need only show that [his] employer treated [him] less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, nondiscriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that "discrimination play[ed] no role" in its actions.

*Id.* (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009)).

*Mihalik* arose in the context of a summary judgment motion, but its principles have been extended by the Second Circuit to motions to dismiss, albeit in non-precedential decisions. In *Gorokhovsky* v. *N.Y.C. Hous. Auth.*, 552 F. App'x 100, 101-02 (2d Cir. 2014) (summary order), the Court reversed in part a dismissal order, finding that the district court had erred in dismissing certain NYCHRL claims "because it improperly applied the same standard as in its analysis of the ADEA, Title VII, and NYSHRL claims." The Court went on to

10

say that "[t]o state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'"  *Id.* at 102 (quoting *Mihalik*); *see also Leung* v. *N.Y. Univ.*, 580 F. App'x 38, 40 (2d Cir. 2014) (summary order) (remanding to district court to consider hostile work environment claims independently under the NYCHRL).

The Supreme Court has held that, to withstand a motion to dismiss, an "employment discrimination plaintiff need not plead a prima facie case of discrimination."  *Swierkiewicz* v. *Sorema, N.A.*, 534 U.S. 506, 515 (2002). Rather, in light of *Swierkiewicz* and the pleading standards subsequently articulated in *Iqbal*, 556 U.S. at 678, the Second Circuit clarified in the context of the analogous Equal Pay Act that "while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *EEOC* v. *Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal citations and quotation marks omitted); *accord Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 228-29 n.10 (2d Cir. 2014) (discussing Title VII claims); *see also Boykin* v. *KeyCorp*, 521 F.3d 202, 214-16 (2d Cir. 2008) (finding that as long as the complaint gives the defendant "fair notice of [the plaintiff's] claim and the grounds upon which it rests," and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate

11

treatment," the complaint satisfies the strictures of Fed. R. Civ. P. 8(a).  As a practical matter, however, while a plaintiff need not allege specific facts establishing a prima facie case of discrimination in order to withstand a motion to dismiss, the elements of a prima facie case often provide an outline of what is necessary to render a plaintiff's claims for relief plausible.  *See Wilson* v. *N.Y.C. Dep't of Corr.*, No. 11 Civ. 9157 (PAE), 2013 WL 922824, at *4 (S.D.N.Y. Mar. 8, 2013), *appeal dismissed* (July 24, 2013).

### 2.    Analysis

Defendants argue that, even construing Plaintiff's complaint liberally, Plaintiff fails to state claims of discriminatory treatment because his Complaint makes only conclusory allegations and does not provide any indication of how any alleged adverse or dispreferential employment action was connected to Plaintiff's gender or age.  (Def. Br. 6-11).  The Court agrees: Plaintiff's conclusory allegations of disparate treatment discrimination are insufficient to "nudge [his] claims across the line from conceivable to plausible to proceed," *EEOC*, 768 F.3d at 254, even under the more liberal standard afforded by the NYCHRL.

Plaintiff's Second Amended Complaint recites that he was placed on Verizon's disciplinary track, tasked with calls on the apparently less-favorable "Billing pin" duty, not placed on a special project he calls the "new retention team," and ultimately terminated.  However, Plaintiff does not allege that any of these actions took place *because of* his gender or his age.  *See*, *e.g.*, *Patane* v. *Clark*, 508 F.3d 106, 112 (2d Cir. 2007) ("The *sine qua non* of a gender-based

discriminatory action claim under Title VII is that the discrimination must be *because of* sex." (citation and quotation marks omitted)).  Instead, Plaintiff simply makes vague, conclusory allegations of "intimidation" and "hostile work environment," and does not connect any action by any supervisor (indeed, any Verizon employee) to his gender or age.  (*See, e.g.*, SAC 5 (claiming that being placed on Verizon's performance plan "intimidated [him] further" and created a "hostile work environment")).[6]  Such conclusory allegations are insufficient to survive a motion to dismiss.  *See EEOC*, 768 F.3d at 254.

Nor does Plaintiff set forth any factual circumstances from which a gender- or age-based motivation for these actions might be inferred.  Plaintiff does not, for example, allege that Kinsey or any other defendant made any remarks that could fairly be viewed as reflecting discriminatory animus.  The only comments the Second Amended Complaint catalogues are Lowe's comment that she "didn't like the way [Plaintiff's] clothes fit"; Kinsey's question, "Do you have some money for me?"; and Lowe's comment that she "wanted 'new blood'" on the "new retention team."  (SAC 4-5).  None of these comments directly remarks on Plaintiff's gender or has any sexual overtones.  Nor do they, individually or collectively, give rise to a reasonable inference that Verizon discriminated against Plaintiff on the basis of gender.  *See Sank* v. *City Univ. of N.Y.*, No. 10 Civ. 4975 (RWS), 2011 WL 5120668, at *9 (S.D.N.Y. Oct. 28, 2011) (dismissing *pro se* plaintiff's discrimination claim because "[t]he Complaint

---

[6]    This Opinion considers Plaintiff's claim for a gender- and age-based hostile work environment separately below.

does not, for instance, allege that any specific decision-maker at City College made comments to or about [plaintiff] from which discriminatory animus based on gender could reasonably be inferred"); *see generally Chertkova* v. *Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) (noting that "circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus").

Lowe's "new blood" comment similarly cannot give rise to a reasonable inference of age discrimination.  *See, e.g.*, *De la Cruz* v. *City of New York*, 783 F. Supp. 2d 622, 643 (S.D.N.Y. 2011) (finding that reference to "new blood" did not raise inference of discrimination without more); *Veleanu* v. *Beth Isr. Med. Ctr.*, No. 98 Civ. 7455 (VM), 2000 WL 1400965, at *5 (S.D.N.Y. Sept. 25, 2000) (finding comment referring to "fresh blood" that was directed to length of tenure, which could apply with equal force to employees under age 40, was age-neutral); *see also Fortier* v. *Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (finding that statements such as needing "new blood" or an employee with a "lot of energy," standing alone, do not raise an inference of age discrimination); *cf. Abdu-Brisson* v. *Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (upholding grant of summary judgment after finding, among other things, that "the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination").  Plaintiff does not allege that Lowe specifically mentioned anything about his age.  And it would be rank speculation to infer that the comment had anything to do with

14

Plaintiff's age, since it could just as easily refer to bringing new members into a group, regardless of age, for a fresh perspective.  Not only does Plaintiff note in the Second Amended Complaint that he was in fact included in a previous "retention group," but also he admits that, while he had seniority over "*most* of the people who were selected," he did not have seniority over all of them. (SAC 5 (emphasis added)).[7]  Conversely, Plaintiff does not allege that all of the members selected for the group were younger than he.  Under these circumstances, the Court cannot reasonably draw an inference of discriminatory animus from the "new blood" statement.[8]

The Second Amended Complaint also nowhere alleges that younger or female employees were given preferential treatment as compared to Plaintiff, which circumstances might also give rise to an inference of discrimination.  *See*

---

[7]     Seniority, of course, is typically used to refer to an employee's tenure at a company as opposed to the employee's age.  However, because Plaintiff is *pro se* and has made claims of age discrimination, the Court considers his assertions regarding "seniority" in that context.  As Defendants argue, to the extent Plaintiff argues that the terms of his employment or his termination were not consonant with his seniority at the company, those assertions are in fact allegations that Defendants breached the CBA's seniority provisions.  (*See* Def. Br. 19-21).  Such claims could not be brought under the state and city laws on which Plaintiff relies because they would be preempted by Section 301 of the LMRA.  *See Morrissey* v. *Verizon Commc'ns Inc.*, No. 10 Civ. 6115 (PGG), 2011 WL 2671742, at *4 (S.D.N.Y. July 7, 2011) ("Courts generally hold that where a state-law discrimination claim turns on application of a collective bargaining agreement's seniority provisions, the claim is preempted by Section 301 of the LMRA." (collecting cases)).  Moreover, while "[t]he Court affords plaintiff special solicitude as a *pro se* litigant[,] [it] declines to consider plaintiff's claims as if he had asserted them under section 301 because plaintiff did not exhaust the CBA grievance procedures," *Maldonado* v. *Good Day Apartments, Inc.*, No. 12 Civ. 2017 (PKC)(AJP), 2013 WL 3465793, at *8 (S.D.N.Y. July 9, 2013), and before bringing a claim under Section 301, "[o]rdinarily an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement," *Vera* v. *Saks & Co.*, 335 F.3d 109, 118 (2d Cir. 2003) (citation and alterations omitted).

[8]     Additionally, as Defendants note, Plaintiff fails to allege any facts indicating that Plaintiff actually applied for or expressed interest in participating in the "new retention team" before its selection (Def. Br. 11), making even more remote an inference of discriminatory animus.

*Patane*, 508 F.3d at 112 (dismissing gender discrimination claim where plaintiff, *inter alia*, failed to allege disparate treatment).

Finally, while affording Plaintiff latitude because of his *pro se* status, the Court cannot draw unreasonable inferences that are not consistent with the actual allegations contained in the Second Amended Complaint.  *See Pahuja* v. *Am. Univ. of Antigua*, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *1 (S.D.N.Y. Dec. 18, 2012) ("Although this Court is mindful of the special solicitude afforded to a *pro se* plaintiff, courts cannot read into *pro se* submissions claims that are not consistent with the pro se litigant's allegations[.]" (internal citations and quotation marks omitted)); *see also Giambattista* v. *Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) (finding the court need not credit "general, conclusory allegations when they are belied by more specific allegations of the complaint" (internal citation and quotation marks omitted)).  In this regard, Plaintiff's own Complaint alleges that both the more favorable "Order pin" duty and positions on the "new retention team" were given to other employees based on "favoritism" (SAC 5) — and, *a fortiori*, not discriminatory animus.

As for the disciplinary performance plan, Plaintiff admits that he was placed in the plan for "forget[ting] the call flow," and that he advanced to the final step before termination, "Step 3," for "not following the call flow."  (SAC 5). These are work-performance, and not discriminatory, reasons for Plaintiff to have been placed on the performance plan.  Moreover, Plaintiff not only concedes, but sets forth in striking detail, his ongoing work-performance

16

problems even after he was placed in "Step 3": despite additional training and a new template, Plaintiff continued to have difficulty with "the volume of irate Verizon users" and "serious billing problems" (*id.*); he was overwhelmed by his workflow (*id.* at 6); he was frustrated with Verizon's new computer system despite being provided the same training as other employees (*id.*); and he struggled with calls without his template, which had been left in the flooded Manhattan office through no fault of Defendants' (*id.*).  These facts belie Plaintiff's conclusory allegations that he suffered illegal discrimination; indeed, although Plaintiff alleges he was fired "callously," he does not explicitly allege that he was fired for any discriminatory reason, or allege any facts that could give rise to such an inference.  (*Id.*).

For the foregoing reasons, Plaintiff has not alleged any discrimination in the form of disparate treatment that would plausibly entitle him to relief under federal, state, or city law.  Accordingly, those claims under Title VII, the ADEA, the NYSHRL, and the NYCHRL are dismissed with prejudice.

## C.     The Court Dismisses All But One of Plaintiff's Gender- and Age-Based Hostile Work Environment Claims

Plaintiff also alleges sexual and age harassment in the form of a hostile work environment under Title VII, the ADEA, the NYSHRL, and the NYCHRL. Defendants argue first, that Plaintiff's sexual harassment claim is time-barred, and second, that Plaintiff fails plausibly to plead that he was subjected to a hostile work environment on account of his age or gender.  Because Plaintiff's Second Amended Complaint does not specify dates or time periods for many of the incidents of which he complains, this Opinion addresses only the second of

Defendants' arguments.[9]  While Plaintiff's claims are plainly insufficient under state or federal law, his claim of a hostile work environment based on gender satisfies — just barely — the lower pleading threshold of the NYCHRL.

### 1.    Applicable Law

The Supreme Court has explained that Title VII's prohibition of employment-related discrimination on the basis of race, color, religion, sex, or national origin extends to "a discriminatorily hostile or abusive [work] environment." *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  A hostile work environment claim under that statute requires "conduct [i] that is 'objectively' severe or pervasive — that is, if it creates an environment that a reasonable person would find hostile or abusive [the 'objective' requirement], [ii] that the plaintiff subjectively perceives as hostile or abusive [the 'subjective' requirement], and [iii] that creates such an environment because of plaintiff's … characteristic protected by Title VII."  *Gregory* v. *Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001) (internal citations omitted); *see also Patane*, 508 F.3d at 113.

Hostile work environment claims arising under the ADEA and the NYSHRL are reviewed under the same standard as Title VII claims.  *See*

---

[9]    That is not to say that Plaintiff's claims are *not* time-barred; indeed, as Defendants argue, given the dates that Plaintiff does plead and the context of the claims, it would appear that some of his federal claims, at least as they relate to his allegations of sexual harassment under Title VII, would be time-barred.  (Def. Br. 12-13).  However, because the Court finds those claims to be without merit, as discussed below, it is not necessary to reach this issue or to allow Plaintiff to re-plead with more specificity as to timing.  Further, the Court notes that both New York State and New York City employment discrimination claims are governed by a three-year statute of limitations, so those claims would not be time-barred. *See* N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d).

*Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240-41 (2d Cir. 2007) (ADEA); *Pucino* v. *Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) (NYSHRL).  However, the NYCHRL permits liability for harassment that does not rise to the level of "severe" or "pervasive" conduct, but only amounts to "unwanted gender- [or age-]based conduct."  *Anderson* v. *Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (citing *Williams*, 872 N.Y.S.2d at 38).  Accordingly, "claims under the [NYCHRL] must be given 'an independent liberal construction.'" *Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams*, 872 N.Y.S.2d at 31).  A plaintiff under the NYCHRL is required only to "show differential treatment — that [he] [was] treated 'less well' — because of a discriminatory intent."  *Mihalik,* 715 F.3d at 110; *see also id.* at 102 (noting that, in a hostile work environment claim under the NYCHRL, "even a single comment may be actionable in appropriate circumstances." (internal quotation marks omitted)); *Hernandez* v. *Kaisman*, 957 N.Y.S.2d 53, 58-59 (1st Dep't 2012) ("Indeed, we can only dismiss the [NYCHRL] claim if we determine that this is a 'truly insubstantial case' in which defendant's behavior cannot be said to fall within the 'broad range of conduct that falls between "severe and pervasive" on the one hand and a "petty slight or trivial inconvenience" on the other.'" (quoting *Williams* in summary judgment context)).[10]

---

[10]     Citing *Williams*, the *Mihalik* Court observed that "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives, or if the defendant proves the conduct was nothing more than petty slights or trivial inconveniences." 715 F.3d at 113 (quoting *Williams*, 872 N.Y.S.2d at 39-40 & n.27).  Whether a court may employ this

As with a discrimination claim, at the pleading stage a plaintiff need not establish a prima facie case of hostile work environment; he need only make a short and plain statement of the claim that shows entitlement to relief and that gives the defendant fair notice of the claim for hostile work environment and the grounds upon which that claim rests.  *See Swierkiewicz*, 534 U.S. at 512.

### 2.   Plaintiff's Claims for Hostile Work Environment Because of Age Are Dismissed with Prejudice

All of Plaintiff's claims of age harassment fail: as Defendants argue, Plaintiff has not asserted that any of the conduct of which he complains — snide remarks, shoulder touches, failures to say "Good morning," or observations of Plaintiff's work performance — is connected to his age. While it is true that Plaintiff need not "append to each allegation of harassment the conclusory declaration 'and this was done because of my [protected characteristic]'," he still must allege "factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment *because of* [his protected characteristic]."  *Gregory*, 243 F.3d at 694 (emphasis added); *see*

---

standard at the motion to dismiss stage, however, is not clear.  For starters, the *Williams* Court offered this standard as a means of effectuating the broad reading of the NYCHRL sought by the Restoration Act:

> The way to avoid this result [i.e., reading the statute as a "general civility code"] is not by establishing an overly restrictive "severe or pervasive" bar, but by recognizing an affirmative defense whereby defendants can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider "petty slights and trivial inconveniences."

872 N.Y.S.2d at 40-41.  The fact that the standard was presented initially as an affirmative defense would suggest that it is premature to employ it at the motion to dismiss stage, although a few New York State courts have done so.  *See, e.g.*, *Massaro* v. *Dep't of Educ. of N.Y.C.*, 993 N.Y.S.2d 905, 905-06 (1st Dep't 2014); *Kim* v. *Goldberg, Weprin, Finkel, Goldstein, LLP*, 987 N.Y.S.2d 338, 344 (1st Dep't 2014).

*also Redd* v. *N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) ("[T]he plaintiff must establish that the hostile or abusive treatment was because of his or her sex." (citing *Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998))).

Plaintiff simply does not allege that any purportedly hostile actions took place "because of" his age.  Therefore, even under the more liberal standard of the NYCHRL, Plaintiff's hostile work environment claims based on age warrant dismissal.  *See Harris* v. *NYU Langone Med. Ctr.*, No. 12 Civ. 454 (RA)(JLC), 2013 WL 3487032, at *27 (S.D.N.Y. July 9, 2013) (dismissing NYCHRL hostile work environment claims where plaintiff made "no allegations that she was disciplined … *because of* her race or disability"), *report and recommendation adopted as modified*, No. 12 Civ. 454 (RA), 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); *Fattoruso* v. *Hilton Grand Vacations Co.*, LLC, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012) (dismissing NYCHRL hostile work environment claim because plaintiff alleged nothing to indicate that he was treated unequally based on his gender), *aff'd*, 2013 WL 2123088 (2d Cir. May 17, 2013); *Williams* v. *Metro-North Commuter R.R. Co.*, No. 11 Civ. 7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012) (finding plaintiff's failure to allege that defendant's acts were "perpetrated against him because of either his race or his gender" was "fatal to his hostile work environment claim"); *Ortiz* v. *Standard & Poor's*, No. 10 Civ. 8490 (NRB), 2011 WL 4056901, at *4 & n.10 (S.D.N.Y. Aug. 29, 2011) (dismissing plaintiff's hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL because they failed "to state a claim under

even the more permissive NYCHRL standard" and did not "show that he experienced disparate treatment because of his age or disability").

The only statement that Plaintiff even hints might be tied to his age is Defendant Lowe's comment that she wanted "new blood" on the "new retention team." But, for the reasons discussed above, any connection of this phrase to Plaintiff's age is dubious. Even if it were referring to Plaintiff's age, such an isolated comment cannot plausibly state a claim for hostile work environment. *See Petrosino* v. *Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *see also Johnson* v. *City of New York*, No. 10 Civ. 6294 (RJS), 2012 WL 1076008, at *7 (S.D.N.Y. Mar. 28, 2012) (finding that plaintiff did not establish that comment that he was an "idiot" was related to his disability, and that, in any event, single comment cannot support a hostile work environment claim). Thus, Plaintiff's hostile work environment claims based on age under federal, state, and city law are dismissed.

### 3. Plaintiff's Federal and State Claims for Hostile Work Environment Because of His Gender Are Dismissed

Plaintiff's claims of a gender-based hostile work environment — with one exception discussed below — fail for similar reasons. For the great majority of the purportedly hostile actions — the snide remarks, the failures to say "Good morning," the observations of Plaintiff's work performance, the refusal on the part of other managers to provide assistance — Plaintiff fails to tie these actions to his gender. Moreover, Plaintiff's allegations do not permit the

22

inference that Plaintiff was treated the way he was *because* he was a man. *See Gregory*, 243 F.3d at 694; *Redd*, 678 F.3d at 175. As to these allegations, Plaintiff's failure to allege a link to his gender requires that they be dismissed. *See* Section 2.b., *supra* (collecting cases); *see also Winston* v. *City of New York*, No. 12 Civ. 0395 (FB)(VVP), 2013 WL 4516097, at *3 (E.D.N.Y. Aug. 23, 2013) ("Dispositive to the inquiry, a plaintiff must demonstrate that the hostility is 'discriminatory' — that is, impermissibly based upon gender."), *on reconsideration*, No. 12 Civ. 0395 (FB)(VVP), 2014 WL 2957488 (E.D.N.Y. July 1, 2014).

However, reading his Second Amended Complaint generously, Plaintiff's allegations could be construed to suggest that the incidents in which Defendant Kinsey "would place her hands on [Plaintiff's] shoulders and press her breasts against [Plaintiff]" or "would walk by [Plaintiff's] desk, touch [his] shoulders, and ask, 'Do you have some money for me?'" are connected to gender as unwanted touchings from an individual of the opposite sex. Additionally, as it relates to Kinsey's question about money, Plaintiff states that "the comment itself was *emasculating* and not proper office decorum." (SAC 5 (emphasis added)).

As a general matter, neither federal, state, nor city discrimination laws are intended to operate as a "general civility code" for the workplace. *See Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 68 (2006) (discussing Title VII); *Williams*, 872 N.Y.S.2d at 40 (discussing the NYCHRL). "[Im]proper office decorum," without more, is simply not actionable under discrimination

23

laws, however uncomfortable it may make someone.  Plaintiff's conclusory

allegation that a comment devoid of any reference to his sex or apparent

discriminatory animus was "emasculating" is simply not enough to give rise to

any reasonable inference of a hostile work environment based on sex.

Plaintiff's allegations regarding "observations" and physical touchings

also do not amount to a plausible claim under federal or state law because they

are neither severe nor pervasive.  A case decided in this District, *Anderson* v.

*Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012), is

instructive.  In *Anderson*, the plaintiff claimed a hostile work environment

where he alleged, "[w]ithout specifying a time period," that his supervisor

"would come around my cube on occasions and place her vagina literally on my

left shoulder or inches from my face" and "would at times come to my cube and

position herself in such a way that her vagina is practically sitting on my left

shoulder, or would stand so close to me that if I was to turn to my left my nose

would be directly in front of the bottom of her stomach."  850 F. Supp. 2d at

404.  The district court dismissed plaintiff's claims, holding:

> We find that plaintiff's allegations at most support the
> inference that on some occasions [individual
> defendant], who was plaintiff's supervisor and
> accordingly had reason to visit him in his cubicle, …
> stood too close to plaintiff. From an objective
> perspective, her conduct is far short of what might be
> called "severe" or "pervasive" and so is facially
> insufficient to support a claim under [Title VII and the
> NYSHRL].

*Id.* (citing *Williams*, 872 N.Y.S.2d at 40); *see also Redd*, 678 F.3d at 177

("Casual contact that might be expected among friends — a hand on the

shoulder, a brief hug, or a peck on the cheek — would normally be unlikely to create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection." (citations and alterations omitted)); *Alfano* v. *Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." (internal citation and quotation marks omitted)).

The Second Circuit and district courts within this Circuit have routinely rejected gender-based hostile work environment claims alleging similar or even more offensive incidents.  *See*, *e.g.*, *Cristofaro* v. *Lake Shore Cent. Sch. Dist.*, 473 F. App'x 28, 30 (2d Cir. 2012) (summary order) (holding that where, over a seven- year period, an employee's supervisor "occasionally commented on [plaintiff's] physical appearance," "participated in a bet with three other male employees as to when [the supervisor] would be able to engage [plaintiff] in sexually explicit conversation," engaged "in conversation unrelated to work once a month for three-and-half years," and "briefly made contact with the side of [plaintiff's] body," among other actions, the "record [was] insufficient as a matter of law to permit a reasonable factfinder to identify a hostile work environment based on sex" under federal or state law); *Quinn* v. *Green Tree Credit Corp.*, 159 F.3d 759, 763-64 (2d Cir. 1998) (finding insufficient evidence of hostile work environment under federal and state law where co-employee "told [plaintiff] she had been voted the 'sleekest ass' in the office" and "deliberately touched [plaintiff's] breasts with some papers that he was holding in his hand"); *Salvatore* v. *KLM Royal Dutch Airlines*, No. 98 Civ. 2450 (LAP),

1999 WL 796172, at *11 (S.D.N.Y. Sept. 30, 1999) (holding that allegations that plaintiff's supervisor "stood so close to [plaintiff] that he brushed up against her on 'some occasions'" were insufficient to support claim of hostile work environment); *id.* (holding that allegations that plaintiff's supervisor would put his arm around plaintiff's shoulder or through her arm and say "Come, Wife," "Come, Dear," or "Let's go, Hon" insufficient to support claim of hostile work environment); *Lamar* v. *NYNEX Serv. Co.*, 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (holding that allegations that plaintiff's supervisor touched her hand, said she looked "hot," and stared at her were "too mild and innocuous to constitute sexual harassment as a matter of law" under Title VII).

By the same token, this case is distinguishable from those in which courts have sustained hostile work environment claims: Plaintiff does not, for example, allege Kinsey's conduct was a sexual advance, that it happened on a daily basis, or that he asked Kinsey to stop touching him but that the touchings continued anyway.  *See*, *e.g.*, *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 70, 74-76 (2d Cir. 2001) (finding a triable issue on Title VII and ADEA claims in summary judgment context where harasser touched plaintiff in unwelcome manner "constantly or daily," "touch[ed] her hair a lot," made "obscene leers at her," "tried to peer down her blouse and up her skirt," and made "approximately ten or twenty" insinuating remarks about her sex life); *Guzman* v. *Macy's Retail Holdings, Inc.*, No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at *5 (S.D.N.Y. Mar. 29, 2010) (concluding that allegation of sexual advance in which supervisor pressed his genitals against female plaintiff

employee repeatedly, after having been asked to stop, was sufficient to withstand motion to dismiss claims made under federal and state law).

The vast majority of Plaintiff's allegations in the Second Amended Complaint concern his frustrations and annoyances with his workplace and with supervisors with whom he did not get along. *See Alfano*, 294 F.3d at 377 ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals."). These grievances are not actionable as a hostile work environment under federal or state law.

Whether Plaintiff's allegations support a claim under the more expansive NYCHRL is a closer question. Reading the Second Amended Complaint liberally, Plaintiff alleges that (i) he was attuned (as a result of prior work experience) to "detecting insensitivity or hostility in others" (SAC 4); (ii) though Plaintiff had always been outnumbered by women in his work experiences, he never felt threatened or intimidated by women until he was supervised by Lowe and Kinsey (*id.*); (iii) Kinsey observed him "constantly" while supervising him, but her observations "began to take on a bizarre twist as Ms. Kinsey would place her hands on my shoulders and press her breasts against me" (*id.*); (iv) Kinsey's behavior was blatant enough to merit comments from co-workers about her attention (*id.*); (v) separate and apart from her remote or side-by-side

27

"observations" of Plaintiff's work, Kinsey would walk by and touch Plaintiff's shoulders while asking, "Do you have some money for me?" (*id.* at 5); (vi) only after Plaintiff filed an internal complaint at Verizon did the touching stop (*id.*). To be sure, Plaintiff's allegations are inartful; there is no indication, for instance, of the number and frequency of these episodes, nor does Plaintiff specifically allege that the touchings took place because of his gender. However, in light of Plaintiff's prefatory allegations about his training in sexual harassment and the potentially gender-charged physicality of the conduct alleged, the Court understands Plaintiff to be alleging that the repeated touchings to which he was subjected occurred because of his gender.  This is barely sufficient, but sufficient, under the NYCHRL for Rule 12(b)(6) purposes. *See, e.g.*, *Sletten* v. *LiquidHub, Inc.*, No. 13 Civ. 1146 (NRB), 2014 WL 3388866, at *8 (S.D.N.Y. July 11, 2014) (denying motion to dismiss NYCHRL hostile work environment claim brought by employee who heard, secondhand, that other employees were mocking him based on his sexual orientation, which learning adversely affected his work environment and "meant that he was treated less well than other employees based on his sexual orientation"); *Garrigan* v. *Ruby Tuesday, Inc.*, No. 14 Civ. 155 (LGS), 2014 WL 2134613, at *4 (S.D.N.Y. May 22, 2014) (denying motion to dismiss hostile work environment claim under the NYCHRL, where the complaint alleged that the defendant "treated Plaintiff less well by spreading rumors about her at work").

**D.    The Court Dismisses Plaintiff's Retaliation Claims**

The Court also understands Plaintiff to bring claims for retaliation pursuant to Title VII, the ADEA, the NYSHRL, and the NYCHRL.[11]  Defendants argue that Plaintiff's retaliation claims fail because Plaintiff fails to establish any causal connection between his protected activities and any adverse employment action.

**1.    Applicable Law**

Broadly speaking, federal, state, and city law make it unlawful for an employer to retaliate against an employee because that employee has made a charge or complaint of discrimination.  *See* 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA); N.Y. Exec. Law § 296(7) (NYSHRL); N.Y.C. Admin. Code § 8-107(7) (NYCHRL).  In order to establish a prima facie case of retaliation, an employee must show: "[i] participation in a protected activity known to the defendant; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action."  *Anderson*, 850 F. Supp. 2d at 413 (citing *Richardson* v. *Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2008)).

The same analysis applies to Title VII, the ADEA, and the NYSHRL; under the NYCHRL, a plaintiff need not prove any materially adverse employment action, only that the employer "engaged in conduct that was reasonably likely

---

[11]    As noted above, while still employed at Verizon, Plaintiff filed an internal complaint. (SAC 5).  Plaintiff was terminated in February 2013, and did not file his EEOC charge until April 2013.  The Court therefore understands that Plaintiff's allegations of retaliation relate to his internal complaint, and not the EEOC charge.

to deter a person from engaging" in a protected activity.  *Mihalik*, 715 F.3d at 112; *see also Terry* v. *Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (stating that ADEA claims are analyzed under the same framework as claims brought pursuant to Title VII).

Despite Plaintiff's mixed record of success in alleging disparate treatment and hostile work environment claims, he still may be able to succeed in setting forth a retaliation claim.  *See Holland* v. *City of New York*, No. 10 Civ. 2525 (PKC), 2011 WL 6306727, at *9 (S.D.N.Y. Dec. 16, 2011) (noting "plaintiff need not establish a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation" (citing *Boykin*, 521 F.3d at 213-14)).  Again, the elements of a prima facie retaliation claim provide the Court a guide to determine what is necessary to render a plaintiff's claims for relief plausible, although a plaintiff need not set forth specific facts establishing a prima facie case.  *Wilson*, 2013 WL 922824, at *4.

### 2.    Analysis

Defendant does not dispute that the Second Amended Complaint adequately pleads that Plaintiff engaged in a protected activity by filing an internal discrimination complaint at Verizon.  (*See* SAC 5; Def. Br. 16).  As relevant to his retaliation claims, Plaintiff alleges that after he filed his internal complaint:

> [T]hey informed Ms. Lowe and Kinsey of my grievances and the two set out to make my working conditions more difficult.  The side by side and remote observations increased exponentially.  Other managers were instructed to observe me....  Soon thereafter I was

> place[d] on Step 2 (reprimand) of the pep (performance
> plan).

(SAC 5).[12]  Plaintiff fails to specify when he filed his internal complaint and

when these allegedly retaliatory actions took place.  Because the next date set

forth in the Second Amended Complaint is August 2012, by which time he had

been put on "Step 3" of Verizon's performance plan (*id.*), the Court can draw

the reasonable inference that Plaintiff filed his internal complaint in July 2012

or earlier (but after December 10, 2011, which is the date of his first

complained-of conduct).  In February 2013, Plaintiff was fired.  (SAC 6).

First of all, Plaintiff's complaints about his work performance being

"observed" are "too non-specific to support a retaliation claim."  *See Baez* v.

*Visiting Nurse Serv. of N.Y. Family Care Serv.*, No. 10 Civ. 6210 (NRB), 2011 WL

5838441, at *6 (S.D.N.Y. Nov. 21, 2011) ("The generalized 'harassment,

bullying, intimidations, and stalking' plaintiff claims to have experienced after

filing [a complaint] are too non-specific to support a retaliation claim.").

Nonetheless, as Defendants recognize, being placed in a disciplinary program

---

12      The Court notes here that Plaintiff alleges he was put on "Step 2" of the "performance
        plan" subsequent to his internal discrimination complaint.  This suggests that Plaintiff
        had been placed in "Step 1" of the plan prior to his internal complaint, which, as an
        adverse employment action due to poor performance beginning prior to his complaint,
        would seem to vitiate any causal connection.  *See, e.g., Deebs* v. *Alstom Transp., Inc.*,
        346 F. App'x 654, 657-58 (2d Cir. 2009) (summary order) (finding where adverse
        employment actions due to poor performance preceded plaintiff's filing of an EEOC
        complaint, no causal connection could arise despite temporal proximity); *Dixon* v. *Int'l
        Fed'n of Accountants*, No. 09 Civ. 2839 (HB), 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9,
        2010) ("[Plaintiff] was subjected to repeated critiques and complaints about her
        management and performance skills before she ever lodged any complaints about
        discrimination and, as such, her retaliation claim must be dismissed."), *aff'd*, 416 F.
        App'x 107 (2d Cir. 2011) (summary order).  However, given the lack of temporal
        specificity in the Second Amended Complaint and the dearth of factual allegations
        regarding the structure of Verizon's disciplinary program, the Court cannot consider
        this issue at this time.

and being fired both unquestionably rise to the level of adverse employment action (and, therefore, certainly meet the lower NYCHRL threshold of "conduct that was reasonably likely to deter a person from engaging" in a protected activity, *Mihalik*, 715 F.3d at 112).

But, even assuming that Plaintiff has alleged that he engaged in a protected activity and subsequently suffered adverse employment actions, he has again failed properly to allege a causal nexus.  A plausible inference of a causal connection can be drawn either "[i] indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or [ii] directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Hicks* v. *Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (citing *Gordon* v. *N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  Here, Plaintiff does not plausibly allege consequential disparate treatment or retaliatory animus, so he must rely on temporal closeness.

"While the Second Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal [or state] right to be considered causally connected, it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together."  *Henry* v. *NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (citations omitted) (analyzing federal and state rights together); *see also Clark Cnty. Sch.*

*Dist.* v. *Breeden*, 532 U.S. 268, 273 (2001) (holding that to establish causation in retaliation claim, "temporal proximity must be 'very close'"); *Baldwin* v. *Cablevision Sys. Corp.*, 888 N.Y.S.2d 1, 6 (1st Dep't 2009) (concluding, in context of NYCHRL retaliation claim, that four months between protected act and alleged retaliatory action was "not temporally proximate enough to satisfy the causality element of plaintiff's retaliation claim" (citing *Clark Cnty. Sch. Dist.*, 532 U.S. at 273)).

In *Henry*, the court found that plaintiff's allegations that "defendants retaliated against her *when* she complained" and "*after* she complained and/or the conduct became known to others," failed "to state with even a modicum of specificity when the relevant events occurred." *Henry*, 18 F. Supp. 3d at 412 (emphases in *Henry*). The Court held that "[s]uch conclusory allegations are simply too vague in nature and non-specific as to time to serve as a basis for her retaliation claims." *Id.* (internal citation and quotation marks omitted); *see also Winston*, 2013 WL 4516097, at *3 (dismissing retaliation claim because plaintiff's "blanket statement that the demotion took place 'upon return from a vacation taken shortly after [the protected activity]' [was] insufficient to satisfy *Iqbal's* standards"); *cf. Winston,* 2014 WL 2957488, at *2 (on reconsideration, permitting plaintiff to amend her complaint with a specific time frame and finding that as amended, it pled facts sufficient to raise an inference of retaliatory animus). The *Henry* court granted defendants' motion to dismiss the plaintiff's retaliation claims based on Title VII and the NYSHRL. *Henry*, 18 F. Supp. 3d at 413.

Here, Plaintiff uses language just as vague and non-specific as in *Henry* and *Winston* when referring to *when* he was placed on Verizon's disciplinary program: he simply states that his placement in "Step 2" occurred "soon thereafter" and says nothing about his placement in "Step 1." (SAC 5). If Plaintiff filed his internal complaint in July 2012 and was also placed in the performance program in July 2012, perhaps this could raise a reasonable inference of retaliatory animus. But if Plaintiff lodged his complaint in December 2011 and was not placed in the performance program until July 2012, it could not. *See*, *e.g.*, *Clark Cnty. Sch. Dist.*, 532 U.S. at 273-74 (noting that the two events must be "very close," and that a proximity of three months or more is insufficient); *Dixon* v. *Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) (summary order) (finding four months, without more, to be insufficient circumstantial evidence of causation). Likewise, Plaintiff's firing in February 2013, which occurred seven months or more after he lodged his internal complaint, is not close enough in time to his filing of the internal complaint to give rise to any plausible causal inference. Accordingly, Plaintiff's retaliation claims under Title VII, the ADEA, the NYSHRL, and the NYCHRL must be dismissed.

**E.     The Court Will Grant Plaintiff Leave to Amend His Retaliation Claims Only**

Plaintiff filed no opposition to Defendants' motion to dismiss, and he has not otherwise sought leave to amend his Second Amended Complaint. However, the principle that the "court should freely give leave [to amend a pleading] when justice so requires," Fed R. Civ. P. 15(a)(2), is particularly

applicable to *pro se* plaintiffs, *see Davis* v. *Goord*, 320 F.3d 346, 352 (2d Cir. 2003).  "A *pro se* complaint should not be dismissed without the court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).  "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Lucente* v. *Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

Here, as it concerns Plaintiff's discrimination and hostile work environment claims, despite having been given several opportunities to amend his complaint, Plaintiff has not alleged facts sufficient to "nudge [his] claim[ ] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Plaintiff was put on notice, both by Defendants' pre-motion letter (Dkt. #13) and by the Court during the April 1 and May 28, 2014 conferences (Dkt. #17, 22), that there were deficiencies as to these claims, including a lack of causal nexus with his gender and age.  The Court gave him two opportunities to amend.  Nonetheless, with the exception of the claim for gender-based hostile work environment under the NYCHRL, Plaintiff's allegations are utterly conclusory and plead no factual matter that ties the conduct of which he complains to his gender or his sex.  They are paradigmatic examples of an "unadorned, the-defendant-unlawfully-harmed-me accusation" that "will not do." *Iqbal*, 556 U.S. at 678.  Accordingly, the Court will deny Plaintiff leave to amend his discrimination and hostile work environment claims as futile, and

dismiss those claims (with the exception of the above-mentioned NYCHRL claim) with prejudice.

However, the Court will give Plaintiff the opportunity to amend his federal, state, and city retaliation claims.  First, the sufficiency of his retaliation claims was not addressed in Defendants' pre-motion letter,[13] nor did the Court give them specific attention at the May 28, 2014 conference.  Plaintiff therefore was not on prior notice of the insufficiency of those claims.  Moreover, the Court's dismissal of Plaintiff's retaliation claims at this juncture hinges on his failure to allege specific dates and time periods, a defect that is easily remedied. *See Winston,* 2014 WL 2957488, at *2 (permitting plaintiff to amend her complaint with specific time frame despite multiple prior amendments).  At the same time, as Defendants argue, neither Title VII nor the ADEA "subjects individuals, even those with supervisory liability over the plaintiff, to personal liability."  *Guerra* v. *Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order).  Therefore, Plaintiff's retaliation claims arising under Title VII and the ADEA are dismissed with prejudice as to individual Defendants Lowe, Kinsey, Shea, and Donovan, and without prejudice as to Verizon.  Plaintiff's retaliation claims arising under the NYSHRL and the NYCHRL are dismissed without prejudice as to all Defendants.

---

[13]     Defendants did argue in their letter that Plaintiff's federal retaliation claims under Title VII must be dismissed because Plaintiff failed to exhaust administrative remedies by not asserting such a claim in his charge filed with the EEOC.  (Dkt. #13 at 2).  However, Defendants abandon this argument in their motion to dismiss, presumably because, upon review of the full EEOC charge, it is clear that Plaintiff did assert a retaliation claim.  (*See* Wexler Decl. Ex. D at 15).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety.  Specifically, Plaintiff's federal, state, and city law claims of employment discrimination and hostile work environment are DISMISSED WITH PREJUDICE, with the exception of his claim of hostile work environment because of gender under the NYCHRL.  Plaintiff's federal claims of unlawful retaliation against individual Defendants are DISMISSED WITH PREJUDICE.  Plaintiff's federal claims of unlawful retaliation as to Defendant Verizon, and his state and city claims of unlawful retaliation as to all Defendants are DISMISSED WITHOUT PREJUDICE to amendment.  If he wishes to do so, Plaintiff may file a third amended complaint in accordance with this Order on or before **February 20, 2015**.  The Court cautions Plaintiff not to attempt to re-plead his claims that have been dismissed with prejudice, and to focus on re-pleading his retaliation claims.  If Plaintiff does not file an amended complaint by February 20, 2015, the Court will issue an order transferring the NYCHRL hostile work environment claim to New York State Supreme Court within seven days of that deadline.  If Plaintiff files an amended complaint in accordance with this Opinion, the Court will promptly set a conference to discuss discovery or further motion practice.

SO ORDERED.

Dated:      January 20, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge